IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK26-40222 |
| | ) | |
| MICHEAL M. REMMERS, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Findings and Conclusions Regarding Motion to Determine the Effectiveness of the Automatic Stay**

Micheal Remmers, at the request of a state court, filed a motion to verify the automatic stay of 11 U.S.C. § 362 remains in effect in his bankruptcy case. The motion follows state court enforcement of a civil contempt sanction designed to collect prepetition support arrearages the debtor owes to his former wife, Bailee Remmers. Christopher J. Gamm appeared for the debtor. Bailee Remmers and her counsel were served notice but did not appear.

The stay is in effect. Confirmation of the debtor's plan did not end the stay, and his postpetition earnings remain property of the estate. Enforcement of the state court's prepetition contempt sanction, designed to compel the debtor to pay child support arrearages that accrued before the debtor filed his bankruptcy petition, is barred until the case is closed or dismissed or a discharge is granted or denied. The contempt warrant and mittimus the state court issued violated the stay and are void.

**Findings of Fact**

On March 31, 2025, Bailee Remmers filed an action to dissolve her marriage to the debtor in the District Court of Douglas County, Nebraska, at Case No. CI 25-2550. On July 2, 2025, the state court entered a temporary order requiring the debtor pay child support of $531 monthly plus $300 monthly toward marital debts.

The debtor did not make all the required payments. On December 16, 2025, Ms. Remmers applied for an order requiring the debtor show cause why he should not be held in contempt for the nonpayment. The same day, the state court entered an order requiring the debtor appear and show cause on February 13, 2026, when the dissolution action was set for trial. The state

court entered a final divorce decree on February 17, 2026. The decree included findings regarding the nonpayment.

The state court found the debtor willfully violated the temporary support order by failing to pay required child support and marital debt payments.[1] It made the finding by clear and convincing evidence. It sentenced the debtor to 30 days in the Douglas County Correctional Center and ordered him to surrender himself on September 1, 2026. The decree states failure to appear would result in a warrant for his arrest.

The state court allowed the debtor to purge the contempt and avoid his jail sentence by:

> a) paying child support each month as set out in this Decree of Dissolution, and b) paying an additional two hundred fifty dollars ($250.00) in the months of March, April, May, June, July, August, 2026 toward his child support arrearage.

The debtor filed this Chapter 13 case on March 3, 2026. On March 17, the debtor's bankruptcy counsel filed a Suggestion of Bankruptcy in the dissolution action, attaching the official Notice of Chapter 13 Bankruptcy Case. The suggestion and notice were served on Ms. Remmers' divorce attorney.

The debtor's plan was confirmed on May 6, 2026, and his amended plan was confirmed on August 21. Between the two confirmations, on May 12, Ms. Remmers filed Proof of Claim 8-1 in the debtor's bankruptcy case in the amount of $2,976.54, asserting a priority claim for child support under 11 U.S.C. § 507(a)(1)(A). She did not file a claim for the marital debt payments.[2]

The plan fully pays the child support arrearage. Part 5(A) of the plan also requires the debtor pay all postpetition domestic support obligations through

---

[1] The state court found the child support arrearage as of February 13, 2026, was $2,932.91 and the marital debt payment arrearage was $1,823.86. In her application Ms. Remmers also sought an order of contempt for the debtor's alleged violations of a non-harassment provision and a parental communication provision of the temporary order. The debtor was not held in contempt on the nonmonetary grounds.

[2] Although Ms. Remmers did not include the marital debt payments in her proof of claim, her contempt application sought enforcement of the marital debt payment provision, and the debtor was held in contempt for failing to make those payments. But the purge conditions required payment only toward the child support arrearage.

employer withholding and not through the plan. Plan payments are made by payroll deduction. Under Part 10, ¶ 2 of the district's form plan:

> Property of the estate, including the debtor(s)' current and future income, will revest in the debtor(s) after a discharge is entered, and the debtor(s) will have the sole right to use and possess property of the estate during this case.

A discharge has not been entered. Absent a hardship discharge under § 1328(b), a discharge will not be entered until the debtor completes his plan payments.

The debtor is current on his postpetition child support. Having provided for the support arrearage in his plan, the debtor did not make the monthly purge payments. The debtor's counsel advised the debtor he did not need to surrender himself on September 1 because the suggestion notified the state court of the automatic stay and because the state court's docket showed no hearing that day.

The debtor followed his attorney's advice. He did not surrender himself. On September 1, 2026, Ms. Remmers' counsel appeared before the state court, showed the purge payments were not made, and asserted that because the automatic stay "did not apply to child support payments, neither did it bar enforcement of child support arrears." The state court issued a contempt warrant for the debtor's arrest and a mittimus the same day. According to the state court docket, Ms. Remmers did not file a motion showing the stay did not apply or had been terminated, annulled, modified, or conditioned to allow the contempt to proceed. Nor did she obtain relief from the stay in this court.

On September 4, 2026, the debtor filed a motion to quash the warrant in state court. The state court informed the debtor's counsel a hearing was required. No hearing was requested or scheduled. On September 8, 2026, the debtor filed this motion. In it he states that the state court judge and Ms. Remmers' counsel asked the debtor to obtain an order from this court verifying the automatic stay is still in effect.

On September 17, 2026, after consulting further with the debtor's counsel, Ms. Remmers' attorney filed an unopposed motion in state court to recall the contempt warrant. In her motion she describes the contempt proceeding as one for "civil contempt." The state court granted the motion the same day. The order states the contempt "remains valid and of record, but further enforcement is held in abeyance because federal law presently prevents the

Court from acting." It also contemplates further enforcement on a later motion showing the stay does not apply or this court has allowed enforcement, among other things. The order does not withdraw the mittimus.

## Conclusions of Law

This court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). This court has authority to determine the scope and applicability of the automatic stay and enforce it under 11 U.S.C. §§ 105(a) and 362. A state court has concurrent jurisdiction to determine whether the automatic stay applies to a proceeding before it. *See In re Christenson*, 2026 WL 74263, at *4 (Bankr. D. Minn. Jan. 8, 2026) (describing the "prevailing practice" as recognizing "the bankruptcy court and non-bankruptcy courts have concurrent jurisdiction over determining if the stay applies," but "the bankruptcy court has the ultimate determination . . . because the injunction of the automatic stay arises from the bankruptcy case").

This order answers the federal question the state court and counsel for Ms. Remmers asked. Even though the contempt warrant was recalled, the motion is not moot because the mittimus was not withdrawn and the state court's September 17 order contemplates further enforcement of the contempt sanction.

### *The Automatic Stay Is Effective*

The automatic stay remains in full force and effect. The stay of an act against property of the estate "continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The stay of any other act continues until the case is closed, the case is dismissed, or, in a Chapter 13 case, "the time a discharge is granted or denied." *Id.* § 362(c)(2). This case is not closed or dismissed, and no discharge has been granted or denied.

The stay remains in effect as to the debtor, property of the debtor, and property of the estate. Property of the estate includes the debtor's postpetition earnings, and they have not revested in the debtor. "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). The debtor's plan otherwise provides. Part 10, ¶ 2 defers revesting until a discharge is entered. Independently, § 1306(a)(2) keeps postpetition earnings in the estate until the case is closed, dismissed, or converted. 11 U.S.C. § 1306(a)(2). And in the Eighth Circuit, confirmation

does not end the estate. *See Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 691 (8th Cir. 1993) (quoting *In re Aneiro*, 72 B.R. 424, 428–29 (Bankr. S.D. Cal. 1987)) ("[T]he clear language of § 1306 demonstrates that confirmation of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate.").

*Enforcement of the Prepetition Contempt Sanction Is Stayed*

Before the petition, the state court adjudicated the contempt and fixed the sentence and purge terms. The question, therefore, is not whether a show cause hearing could proceed. Nor is purge condition (a) at issue. Current support is being paid, and the September 1 showing concerned only the $250 arrearage payments. The question is whether the stay bars postpetition enforcement of a prepetition contempt sanction when the purge condition at issue requires payment of prepetition debt. It does.

The decree's contempt adjudication is a judgment obtained before the commencement of the case. The sanction rested on prepetition child support and marital debt payment arrearages, and the debtor could avoid incarceration only by paying toward the child support arrearage. Enforcing the sanction implicates several subsections of § 362(a). Issuing a warrant to carry out the sentence was an act to enforce a prepetition judgment against the debtor. 11 U.S.C. § 362(a)(2). Coercing payment of the arrearage with the threat of jail is an act to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *Id.* § 362(a)(6). And the September 1, 2026, proceeding continued a judicial proceeding against the debtor to recover prepetition claims. *Id.* § 362(a)(1).

Enforcing the sanction also implicates § 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). The purge window ran from March through August 2026, almost entirely after the March 3 petition. The only source of purge payments in the record is the debtor's postpetition earnings, which are property of the estate. *Id.* § 1306(a)(2); *Neiman*, 1 F.3d at 691. The plan gives the debtor the sole right to use and possess estate property during the case, and each provides for payment of the arrearage through the plan. Threatening the debtor with jail unless he diverts estate property to one creditor, outside the plan, is an act to obtain property from the estate and exercise control over it.

Enforcement is stayed under each of § 362(a)(1), (2), (3), and (6).

*No Exception Applies*

Ms. Remmers' counsel asserted to the state court that the stay did not reach child support. Section 362(b) does except certain domestic relations proceedings from the stay.[3] But none of the exceptions reaches the proceeding. The first domestic relations exception, § 362(b)(2)(A), excepts civil actions or proceedings:

(i) for the establishment of paternity;
(ii) for the establishment or modification of an order for domestic support obligations;
(iii) concerning child custody or visitation;
(iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
(v) regarding domestic violence.

11 U.S.C. § 362(b)(2)(A). Enforcing the contempt sanction does not establish or modify support. It does not concern custody or visitation. It is not a proceeding "for the dissolution of a marriage." The dissolution concluded with the decree, and the sanction is directed only at unpaid money. Nor does it concern domestic violence. The state court did not find contempt on the non-harassment and communication grounds.

The Bankruptcy Code also excepts from the stay "the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). This exception is the counterpart to § 362(a)(3). It does not apply because the only source of purge payments in the record is the debtor's postpetition earnings, which are estate property. No party identified any non-estate property from which the payments could be made. *See Valentine v. Valentine (In re Valentine)*, 611 B.R. 622 (Bankr. E.D. Mo. 2020) (faulting a state court order demanding payment without identifying non-estate property).

Also excepted is the "withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a

[3] Whether the marital debt payments are a domestic support obligation under 11 U.S.C. § 101(14A) is a question of federal law affecting claim priority and dischargeability. *See* 11 U.S.C. §§ 507(a)(1)(A), 523(a)(5), (a)(15), 1328(a)(2). If the marital debt payments are not a domestic support obligation, § 362(b)(2) does not reach them.

judicial or administrative order or a statute." 11 U.S.C. § 362(b)(2)(C). The contempt sanction is not a withholding order. It is a sanction order designed to coerce payment of a prepetition arrearage. The exception does not allow incarceration for nonpayment of prepetition obligations. *See Valentine*, 611 B.R. at 639 (awarding damages under § 362(k) where the debtor was confined for nonpayment of prepetition support, and holding § 362(b)(2)(C) did not apply absent a withholding or garnishment order).

The criminal proceeding exception, 11 U.S.C. § 362(b)(1), does not apply. Contempt can be civil or criminal depending on the character and purpose of the sanction. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Nebraska law is in accord.

> A court can impose criminal, or punitive, sanctions only if the proceedings afford the protections offered in a criminal proceeding. A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as civil contempt, because it lacks the procedural protections that the Constitution would demand in a criminal proceeding. A civil sanction is coercive and remedial; the contemnors "carry the keys of their jail cells in their own pockets," because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance.

*Sickler v. Sickler*, 878 N.W.2d 549, 564–65 (Neb. 2016) (citation modified).

The proceeding was civil. The state court found contempt by clear and convincing evidence and imposed a sentence the debtor could avoid by paying. Ms. Remmers' own motion describes the proceeding as one for civil contempt, and the only showing her counsel made on September 1 was the debtor's failure to make the purge payments.[4]

---

[4] Purge condition (b) required six monthly payments ending in August 2026. After the debtor's September 1 surrender date, the debtor arguably could no longer purge, leaving a fixed sentence. But the character of a contempt sanction is judged as imposed. *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 636 (1988). When imposed, this sanction was avoidable by payment. Whatever effect the passing of the deadline has under state law, it did not convert the civil proceeding into a "criminal action or proceeding against the debtor" under § 362(b)(1). Otherwise, a creditor could escape the effect of the stay simply by waiting out a purge deadline.

Some courts hold enforcement of a civil contempt order falls outside the stay when the issuing court's primary purpose is to uphold the dignity of its orders rather than collect a debt. *See, e.g., Lowery v. McIlroy & Millian (In re Lowery)*, 292 B.R. 645 (Bankr. E.D. Mo. 2003) (a Chapter 7 case involving contempt for interference with visitation, with an option to avoid jail by paying the former spouse's attorney's fees). The rationale does not apply for the reasons stated above. In *Lowery* the underlying violation was nonmonetary, and the state court acted to punish disobedience of its visitation order. A sanction designed to coerce payment of a prepetition debt to a private party is a collection device. It does not vindicate a court's authority apart from the debt.

The debtor's failure to appear does not change the analysis. The decree required him to appear only to surrender, and he could avoid surrender only by paying down a prepetition claim. The duty to appear was itself a step in enforcing the sanction, and the stay suspended it. The decree provided for the warrant as the means of enforcing the sentence. No exception rescues the warrant or mittimus. *See, e.g., Galmore v. Dykstra (In re Galmore)*, 390 B.R. 901 (Bankr. N.D. Ind. 2008) (stay violated where creditor arranged debtor's arrest on a bench warrant issued for failure to appear at a supplementary proceeding to execute on a judgment).

Finally, the domestic support character of the underlying claim does not change the result. The Bankruptcy Code protects domestic support obligations in a Chapter 13 case through the exceptions in § 362(b)(2); the priority and full payment requirements of §§ 507(a)(1)(A) and 1322(a)(2); the current payment requirements of §§ 1325(a)(8) and 1328(a); and the discharge exception in § 1328(a)(2). Those protections are working here. The plan pays the support arrearage in full, and the arrearage will not be discharged.

*Actions Taken in Violation of the Stay Are Void*

Actions taken in violation of the automatic stay are void, not merely voidable. *See LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999); *Guarantee Mut. Life Co. v. Crounse (In re Eugene L. Pieper, P.C.)*, 202 B.R. 294, 298 (Bankr. D. Neb. 1996). The contempt warrant and mittimus were issued on September 1, 2026, in violation of the stay. Both are void. Both placed the debtor at risk of arrest and incarceration, jeopardizing his employment and the payroll deduction funding his plan payments.

The contempt finding itself, on the other hand, is in the divorce decree and was entered before the petition was filed. The finding is not void, but its enforcement is stayed.[5]

*The Confirmed Plan Independently Bars Collection Outside the Plan*

Independently of the question asked, Ms. Remmers cannot collect the prepetition arrearage outside the confirmed plan. She is bound by the plan and its payment terms.

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). Ms. Remmers received notice of the bankruptcy case, filed a claim, and did not object to confirmation. The debtor's plan provides for payment in full of her prepetition child support claim as a priority claim under §§ 507(a)(1)(A) and 1322(a)(2). While this case is pending, the plan, not a state court collection remedy, governs payment of her claim. Enforcing the purge condition after confirmation would require the debtor to pay a prepetition claim outside the plan, contrary to § 1327(a). *See Fla. Dep't of Revenue v. Gonzalez (In re Gonzalez)*, 832 F.3d 1251, 1258–59 (11th Cir. 2016) (affirming contempt sanctions and holding that even where collection of a domestic support obligation fell within an exception to the automatic stay, it violated the binding effect of the confirmed plan under § 1327(a)).

*Neb. Ct. R. § 6-1506 Places the Burden on the Party Seeking to Proceed*

Nebraska's district courts have a rule for this situation. When a party to a civil case files for bankruptcy, the rule calls for a Suggestion of Bankruptcy with one of three documents attached: a certified copy of the petition, a file-

---

[5] The debtor's motion is not a motion for damages for willful violation of the stay under 11 U.S.C. § 362(k)(1). The section provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The standard for willfulness "does not require a finding of specific intent." *Carter v. First Nat'l Bank of Crossett (In re Carter)*, 502 B.R. 333, 336 (B.A.P. 8th Cir. 2013). It requires "knowledge of the stay" and the intent to perform "the actions which constituted the violation." *Cox v. Andrews (In re Andrews)*, 467 B.R. 173, 189 (Bankr. E.D. Ark. 2011).

stamped copy of the petition, or the "Notice of Bankruptcy Case Filing" generated by the bankruptcy court's electronic filing system.[6] Neb. Ct. R. § 6-1506(A). The rule then provides:

> Upon the filing of the Suggestion of Bankruptcy and one of the three bankruptcy documents noted immediately above, no further action will be taken in the case by the court or by the parties until it can be shown to the satisfaction of the court that the automatic stay imposed by 11 U.S.C. § 362 does not apply or that the automatic stay has been terminated, annulled, modified, or conditioned so as to allow the case to proceed. Such a showing shall be made by motion.

Neb. Ct. R. § 6-1506(A).[7] The rule does not create the automatic stay. The stay arises by operation of federal law upon the filing of the bankruptcy petition. 11 U.S.C. § 362(a). The rule instructs a state court and the parties how to proceed after they are notified of the bankruptcy filing. Two features of the rule matter here and in cases like it.

First, the rule places the burden on the party who wants the case to proceed. Once the suggestion is filed, "no further action will be taken" until someone shows, "by motion," that the stay does not apply or has been lifted. A debtor need not verify the stay. The party seeking to proceed must show why the stay does not bar the action. In this case, no motion under the rule was filed before September 1. After the warrant and mittimus issued, the debtor was asked to obtain an order from this court verifying the stay. Under the rule, the burden belonged to Ms. Remmers, not the debtor.

Second, the motion requirement gives the debtor notice and an opportunity to be heard before a state court decides whether an exception applies. As noted above, a state court may decide the question. But an act taken in violation of the stay is void, so a determination made without a motion, on an oral assertion that an exception applies, risks an act federal law treats as having no effect.

Alternatively, a party may ask the bankruptcy court for relief from the stay under § 362(d) or for an order determining whether the stay applies. Each

---

[6] Official Form 309I was attached to the debtor's suggestion. Form 309I, the notice this court generates, satisfies § 6-1506(A).

[7] Nebraska's county courts have a parallel rule, Neb. Ct. R. § 6-1465.

path protects the debtor, the creditor, and a state court from an act later found void. None was followed in this case before September 1.

*The Limits of This Order*

This order addresses enforcement of the prepetition contempt sanction. It does not review, vacate, or modify the prepetition decree or the contempt adjudication within it. It does not decide whether a future proceeding concerning support accruing after March 3, 2026, would be stayed. That depends on the relief sought and the property targeted for collection. *See* 11 U.S.C. § 362(a)(3), (b)(2)(B), (b)(2)(C). Nothing in this order restrains the state court's jurisdiction over paternity, custody, parenting time, visitation, domestic violence, or the establishment or modification of support. The debtor must remain current on all postpetition domestic support obligations. *See* 11 U.S.C. §§ 1325(a)(8), 1328(a). His failure to do so may constitute cause for dismissal or conversion. *See* 11 U.S.C. § 1307(c)(11).

**Conclusion**

The automatic stay is still in effect as to the debtor, property of the debtor, and property of the estate. The automatic stay bars enforcement of the contempt sanction imposed by the Douglas County District Court. The contempt warrant and mittimus it issued on September 1, 2026, are void. A separate order will be entered.

Dated: September 29, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge